# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALBIR SINGH,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>JAIME RIOS, et al.,<br><br>　　　　　Respondents. | CASE NO. 5:26-cv-00786-MWF-SK<br><br>**ORDER GRANTING IN PART, DENYING IN PART, AND DISMISSING IN PART PETITION UNDER 28 U.S.C. § 2241** |

Petitioner Balbir Singh is a citizen of India who has been subject to a final order of removal since 2016.  After many months in post-removal-order custody, the government released petitioner in 2020 under an order of supervision (OSUP).  But in November 2025, the government suddenly re-detained petitioner without complying with its own regulations governing OSUP revocation.  And the government also failed to meet its burden to show that petitioner's removal to India was reasonably likely in the foreseeable future.  As a result, in March 2026, this Court granted petitioner's application for a temporary restraining order (TRO), finding that he was likely to succeed on the merits of his unlawful re-detention claim—both because the government had violated its own regulations requiring notice and other process before an OSUP revocation and because petitioner's detention had become indefinite under *Zadvydas v. Davis*, 533 U.S. 678 (2001).

Pertinent here, the TRO not only ordered petitioner released from custody but also enjoined the government from re-detaining him unless it complied with the agency's OSUP-revocation regulations.  (ECF 13, 14).  And soon after, this Court converted the TRO into a preliminary injunction (PI) over the government's opposition.  (ECF 18, 19).  Because petitioner had been released by then, the Court's PI order only had to enjoin the government from re-

1

detaining petitioner, pending final disposition of this action, unless they complied with the agency's regulations.  (*Id.*).  Meanwhile, as far as the Court is aware, petitioner remains out of custody on OSUP.

In that procedural posture, when the petitioner has already been released and the merits of his unlawful detention claim all but conclusively decided on the merits, the parties regularly stipulate to entry of final judgment in petitioner's favor—granting the habeas petition for the same reasons and on the same terms set forth in any TRO/PI order.  *See*, *e.g.*, *F.A.L. v. Rios*, *et al.*, No. 8:26-cv-354-ODW, ECF 21 (May 1, 2026); *Nguyen v. Marin*, *et al.*, No. 5:26-cv-1587-MWC, ECF 22 (May 14, 2026); *Rojas v. Semaia*, No. 5:25-cv-1509-SK, ECF 24 (April 24, 2026).  Such stipulated judgments ensure the just, speedy, and inexpensive determination of each petition where the petitioner has already been released—for they recognize both that the petition is not moot until final judgment is entered (contrary to the government's view) just because preliminary injunctive relief has been granted, *see Nielsen v. Preap*, 586 U.S. 392, 403–04 (2019), but also that there are no genuine disputed issues left for adjudication because the reasons and conclusions in the TRO/PI orders are effectively conclusive.  *See Gonzalez v. Arizona*, 677 F.3d 383, 390 (9th Cir. 2012) (en banc); *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1114 (9th Cir. 2007); *see also* Fed. R. Civ. P. 65(a)(2) (providing that merits adjudication of case may be based on same evidence received during PI proceedings).

For reasons not well explained or justified here, though, the parties were unable to stipulate to such an entry of final judgment—even while it would have favored petitioner and the government had no merits arguments left to make other than those it had already preserved (but lost) at the TRO/PI stage.  (ECF 24, 25).  In petitioner's apparent view, it evidently was not

2

enough that this Court had ordered his release *and* enjoined the government from re-detaining

him "unless they comply with the process required under 8 C.F.R. §§ 241.4(l)(1), 241.13(i)."

(ECF 19 at 2).  According to petitioner, he is also now entitled to a permanent injunction barring

his re-arrest unless the government first establishes by clear and convincing evidence—at a pre-

detention hearing before an Article III court (not an immigration court)—that changed

circumstances make him a flight risk or a danger to the community.  (ECF 24 at 9).  And not

only that, petitioner says that he is entitled to a permanent injunction barring the government

from initiating potential third-country removal proceedings without advance notice and other

undefined procedures he claims are required by the Constitution.  (*Id.* at 10).  But on the facts

here, petitioner is not entitled to either these expanded and unbounded forms of prospective relief

through a § 2241 petition—especially when, as here, it has already resulted not only in his

release from custody but also an injunction against revocation of his supervised release unless

the government complies with the agency's regulations.

Starting with petitioner's contention that he is due another customized pre-detention

hearing before any future re-detention, nothing in the Constitution confers a right to have what is

tantamount to first-level bail review in federal district court.  *Cf.* 8 U.S.C. § 1226(e).  Nor, as this

Court and others have recognized, does the Constitution impose a due-process requirement that

the government bear the burden of proving—by clear and convincing evidence no less—that a

noncitizen should be detained under 8 U.S.C. § 1226(a), the discretionary detention statute.  To

the contrary, the "Ninth Circuit has squarely upheld the constitutionality of placing the burden on

the noncitizen in § 1226(a) bond proceedings."  *Wang v. Semaia*, No. 5:26-cv1028-MWF, 2026

WL 1047907, at *2 (C.D. Cal. Apr. 14, 2026) (Fitzgerald, J.) (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1210–12 (9th Cir. 2022)).[1]

Besides, the government is already required by the Court's preliminary injunction—and will continue to be once final judgment is entered—to comply with its own OSUP-revocation regulations before it can revoke petitioner's OSUP. Under those regulations, the government can only revoke if he violates the conditions of release or changed circumstances indicate a significant likelihood that he may be removed in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(i)(1)-(2). And even when those substantive standards are met, the government must provide (a) a written notice stating the reasons for the revocation, to be served at the time of revocation; (b) a prompt initial informal interview after re-detention at which the noncitizen can present evidence and explain why revocation is unwarranted; and (c) a reasoned decision by an official with assigned authority to revoke. *See id.* § 241.13(i)(3), 241.4(l)(1). Petitioner has cited no binding precedents suggesting that the Constitution demands more, much less the kind of pre-detention hearing—in a federal district court with shifted and reallocated burdens of proof—that he evidently imagines.[2]

Petitioner's demand for a permanent prospective injunction barring the government from initiating third-country removal proceedings—again without following some procedures that petitioner has fashioned himself—is likewise misplaced. To start, this Court has no jurisdiction

---

[1] This petition provides no occasion to revisit that conclusion or revise it as a matter of first impression. After *Rodriguez Diaz*, it is "for the Ninth Circuit and Supreme Court to decide" precisely "what procedures are constitutionally required to attach to [§ 1226(a)] hearings." *Al-Sadeai v. US. Immigr. & Customs Enf't*, 2025 WL 905522, at *7 (S.D. Cal. Mar. 25, 2025).

[2] If petitioner's real concern is whether the government will comply with these regulations as ordered (ECF 24 at 8–9), his remedy lies in a motion to enforce the Court's judgment, not a request to expand the habeas writ beyond what it can bear. And anyway, it's not at all evident—if government good-faith compliance is the root concern—how tacking on another gratuitous "pre-deprivation" hearing requirement would be any better than what the Court has already ordered.

to prevent "commence[ment]" of removal proceedings generally.  8 U.S.C. § 1252(g).  And to the extent that there might be some reviewable question what procedures are due in third-country removal proceedings, the requirements for notice and an opportunity to make a fear-based claim already exist.  *See Ibarra-Perez v. United States*, 154 F.4th 989, 999-1000 (9th Cir. 2025).  If there is some other reviewable constitutional or legal issue lurking around third-country removal proceedings, none of that would be ripe for review—let alone for adjudication and permanent injunctive relief—unless third-country removal proceedings are in fact initiated against petitioner.  *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (cleaned up).

* * *

For all these reasons, the petition under 28 U.S.C. § 2241 is granted in part, denied in part, and dismissed in part.  The petition is granted on petitioner's unlawful re-detention claim for the reasons and conclusions already detailed in the Court's TRO/PI orders.  And consistent with those orders, final judgment will be entered in petitioner's favor such that respondents may not revoke petitioner's OSUP and re-detain him unless they comply with the process required under 8 C.F.R. §§ 241.4(l)(1) and 241.13(i).  Otherwise, the petition is denied as to the request for an Article III pre-detention hearing and dismissed without prejudice as to the request for advance third-country removal protections.

IT IS SO ORDERED.

DATED: August 11, 2026     _____

MICHAEL W. FITZGERALD
United States District Judge

5